Garry, J.
Petitioner has been employed as a University Police Officer 1 at the campus of respondent State University of New York at Plattsburgh (hereinafter the University) since 1999. In October 2010, after passing a competitive civil service examination, petitioner was promoted to the title of University Police Officer 2, subject to a probationary period of 12 to 52 weeks. Immediately prior to the end of his probationary period, petitioner was returned to his former position. He thereafter initiated this CPLR article 78 proceeding challenging this determination and seeking reinstatement to the position of University Police Officer 2 with full back pay. Supreme Court dismissed the petition, and petitioner appeals.
Initially, we find no merit in petitioner’s procedural contentions. Respondent Board of Trustees of the State University of New York is statutorily empowered “[t]o make and establish . . . rules and regulations” (Education Law § 355 [2] [b]), and thus properly enacted regulations delegating powers to chief administrative officers, including the powers to make probationary appointments and appoint classified civil service employees (see 8 NYCRR 333.2, 335.18).[1] Further, the Board properly permitted chief administrative officers to assign powers, duties and responsibilities to college administrative officers (see 8 *955 NYCRR 333.9). Contrary to petitioner’s further contention, respondent Arlene M. Sabo, the University Police Chief, and respondent Jerry Lottie, the Assistant Police Chief, did not violate 4 NYCRR 4.5 (b) (5) (iii) by failing to deliver a written report to the University stating the reasons for the termination two weeks prior to the end of his probationary period; the record demonstrates substantial compliance with the notice requirements (see Matter of Schuman v Westchester County Health Care Corp., 304 AD2d 585, 585 [2003], lv denied 100 NY2d 511 [2003]; Matter of Rosenberg v Wickham, 36 AD2d 881, 882 [1971]; see also Matter of Glenn v State Univ. of N.Y., Purchase Coll., 243 AD2d 712, 712-713 [1997]).[2]
As a substantive matter, however, we find that petitioner met his initial burden of proof to raise factual issues as to whether he was terminated in bad faith, and thus a hearing is necessary to determine whether his probationary position was properly terminated based upon his unsatisfactory work performance, or for other improper reasons (see Matter of Scott v Workers’ Compensation Bd. of State of N.Y., 275 AD2d 877, 877-878 [2000]; Matter of Gordon v Town of Queensbury, 256 AD2d 784, 785 [1998]). In so holding, we fully recognize that the rights of a probationary employee are strictly limited (see Matter of Swinton v Safir, 93 NY2d 758, 763 [1999]; Matter of Shabazz v New York State Dept. of Correctional Servs., 63 AD3d 1253, 1254 [2009]). Nevertheless, petitioner has alleged that Sabo and Lottie harbored ill will against him due to a “no confidence” petition that he had circulated among University police officers in 2010. By affidavit testimony, both of these parties denied knowledge of petitioner’s involvement in that matter. However, petitioner further alleges that, as a result of the potential for bias and ill will resulting from this petition, normal protocol was altered when his promotion was under consideration, and these parties were “removed from the decision-making/ recommendation process.” Respondents’ answer includes a general denial of this assertion, but Sabo and Lottie did not directly deny it in their affidavits, and it is not otherwise clearly rebutted in the record. These parties, each vested with supervisory authority relative to petitioner’s employment, were directly responsible for the termination of his promotional position. While the record is not devoid of evidence that petitioner’s work *956 performance was unsatisfactory, he challenges the accuracy of this evidence. On this limited record, the resolution of the parties’ conflicting claims turns primarily on issues of credibility, and we find that petitioner has raised sufficient questions of fact to justify a hearing and development of his allegations of bad faith (see Matter of Garrity v University at Albany, 301 AD2d 1015, 1016-1017 [2003]).
In light of this determination, petitioner’s further contention regarding the lack of documentation in the record, brought about in part by his motion to strike portions thereof, need not be addressed.
Rose, J.P., Lahtinen and McCarthy, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed, without a hearing, those portions of the petition as alleged that the termination of petitioner’s promotional position was arbitrary, capricious and in bad faith; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.

. The chief administrative officer is defined as “[t]he head of a college . . . whether called president, dean, provost, director or otherwise” (8 NYCRR 326.1 [h]).

. The report recommending petitioner’s termination was dated exactly two weeks before the end of his probationary period. Even if, as petitioner contends, this report was not timely delivered, a University official received a separate written list of reasons for the recommendation just over two weeks before the probationary period ended.